IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT, HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 Case |
| Land Preserve, LLC | ) | |
| | ) | Case No. 06-21016 |
| | ) | Hearing Date: November 21, 2006 at 10:00 a.m. |
| | ) | Related Docket No. 14 |

**DEBTOR'S RESPONSE TO FOUR J FUNDING, LLC'S
MOTION FOR RELIEF FROM AUTOMATIC STAY**

*A.   OVERVIEW*

There is a substantial equity cushion in the collateral securing the Movant's alleged claims; hence Movant is entitled to neither stay relief nor additional adequate protection.  Further, the property is critical to an effective reorganization, and is indeed the only hope for same.  Finally, there is no "scheme" at hand – to the contrary this is a garden variety chapter 11 case commenced to stop one creditor from dismembering the Debtor's main asset at the expense of other creditors.  In short, the Motion is without merit and should be denied.

*B.   RESPONSES*

In the interests of clarity and brevity, the Debtor shall first respond point-by-point to the numbered paragraphs in the Motion, then present argument.

1.   The note is a document that speaks for itself.  No response is required.

2.   The deed is a document that speaks for itself.  No response is required.

3.   Admitted.

4.   Admitted that the Debtor was on the petition date in default of the mortgage.

5.   Admitted.

6.      Denied. The Movant has provided no basis for this calculation either in its Motion or directly to the Debtor. Moreover, were the Movant's representations as to the value of the property true and correct, by law no interest would accrue after the petition date. Clearly some amount is owed to the Movant, which shall be determined in connection with this case.

7.      Denied. As an initial matter, Exhibit "C" to the Motion is hearsay and cannot be considered by this Court. Furthermore, to the extent the Court did consider that exhibit, it is contradicted by the report annexed hereto as Exhibit 1, which appraises the value of the property at $1,700,000.00.

8.      Denied. In view of the report annexed hereto as Exhibit 1, and even assuming Movant is correct that it is owed $692,312.86, there is clearly very substantial equity in the property. Further, Movant's claim that the property is "not necessary for an effective reorganization" is facially without merit - the property is not only a "necessary" estate asset but in fact is the only estate asset. Movant's claim is denied.

9.      No response is even required as the sentence is entirely hypothetical. If Movant had any evidence to show the property was "deteriorating" or "decreasing in value" same would have been presented to this Court. At any rate, this paragraph is denied in its entirety,

10.      The Movant appears to be oversecured with a substantial equity cushion and, accordingly, is not entitled to any adequate protection for its interest in the property.

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted in part and denied in part.   This is the Debtor's second bankruptcy case, however this case was not filed pro se.  The Debtor is represented by lead and local counsel, both of whom have filed (or shortly will file) retention applications.  The Debtor's filing is in no way "improper".

17.     Denied.   No "scheme" is at hand, and by Movant's position any bankruptcy filing be a debtor would be a "scheme".  The first filing was done without counsel, in large part because the Debtor's principal was unaware of the requirement to obtain counsel.  That issue is now "off the table" and the Debtor should be allowed to proceed with its case as provided in chapter 11 of title 11.

C.     ARGUMENT

The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See Midlantic Nat. Bank v. New Jersy Dept. of Environmental Protection. 474 U.S. 494, 503 (1986).  It is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.  The automatic stay insures that the Debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir. 1976) (emphasis added).

Thus, the automatic stay implements two goals. First, it prevents the diminution or dissipation of the assets of the debtor's estate during the pendency of the case.

Second, it enables the debtor to avoid addressing a multiplicity of claims against the estate arising in different forums. In re Larkham, 31 B.R. 273, 276 (Bankr. D. Vt. 1983). Stated differently, the policy underlying the automatic stay is to protect the debtor's estate from "the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation." In re Frigitemp Corp., 8 B.R. 284,289 (D.N.Y. 1981).

The Third Circuit has held that the purpose of the automatic stay is to prevent certain creditors from granting a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to the legal cost in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or administration of the debtor. Borman v. Raymark Industries, Inc., 946 F.2d 1031, 1036 (3d Cir. 1991); See also In re Rexene Products, 141 B.R. 574,576 (Bankr. D. Del. 1992).

All of these concerns and policies are exemplified here and in the Motion and Movant's suit. The suit would by definition be in a court different from this one and thus defeat the goals of centralization and uniformity. The Debtor has no counsel in the suit and no authority to use Movant's cash collateral to retain counsel or conduct the suit – it would thus certainly be a chaotic and uncontrolled scramble for the Debtor's assets. And while the suit is not guaranteed to produce conflicting judgments from different courts, allowing it to proceed against the Debtor is the only way to "open the door" to same. The Movant, of course, has no interest in "harmonizing" the interests of all creditors; instead it seeks only to advance its own agenda even if doing so harms other creditors - this cannot be realistically disputed.

The Debtor will suffer substantial prejudice if the Motion is approved and this Court allows the Movant's suit to proceed.   In particular, the Debtor would be

immediately forced to expend important and substantial assets of the estate in defending against the suit that are clearly better spent on reorganizing this business.

Indeed, each dollar spent by the Debtor in connection with the suit will directly impact the distributions that other creditor constituencies receive in this case. Accordingly, allowing the suit to proceed against the Debtor would result in the unnecessary depletion of the Debtor's limited assets and thereby provide the Movant with unwarranted preferential treatment with respect to the other creditors holding claims against the Debtor. The Movant provides no explanation whatsoever, nor could it, to justify such preferential treatment.

At this very early stage in this chapter 11 case, the Debtor should be allowed to focus its efforts on (i) marshalling assets to provide the creditors with a meaningful distribution and (ii) negotiating and adjudicating claim as necessary to facilitate the development, and ultimate confirmation, of a chapter 11 plan. Indeed, only until such a process is completed will there be clarity as to what type of distribution secured and unsecured creditors will receive. The Debtor, therefore, submits that the Movant has failed to meet the burden necessary to justify the relief requested in the Motion, and as a result, respectfully requests that the Motion be denied.

Further, conducting further proceedings in the Movant's suit will not prevent the diminution or dissipation of the Debtor's assets during the pendency of the bankruptcy case - it will cause same. Allowing the Movant's claim to be liquidated via the suit will, as noted above, grant the Movant a preference *vis a vis* other creditors of the Debtor, who will not get such relief. It will also badly deplete the Debtor's assets and interfere with

the orderly administration of the Debtor's estate.  The Movant should, quite simply, be required to file a proof of claim herein.

Pursuant to section 362(d) of the Bankruptcy Code, the Movants must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. The Bankruptcy Code does not define the term "cause", but "courts generally consider the policies underlying the automatic stay [and] ...the competing interests of the debtor and the [m]ovants.  In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).  In particular, bankruptcy courts are to consider the following three factors in balancing the competing interests of the parties:

> (i) the prejudice the Debtor would suffer should the stay be lifted;
>
> (ii) the balance of hardships facing the parties if the stay if lifted; and
>
> (iii) the Movant's probable success on the merits if the stay is lifted.

Continental Airlines, Inc., 152 B.R. at 424; Rexene, 141 B.R. at 557.  As set forth more fully herein, by these touchstones the Movant fails to demonstrate that sufficient cause exists to warrant the modification of the automatic stay in this case.

### i. The Debtor Will Be Substantially Prejudiced If The Motion is Granted.

The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); In re Penn-Dixie Industries, Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980).  If the automatic stay is modified to allow the suit to proceed, the Debtor's ability to administer its estate and this Chapter 11 Case would be negatively impacted.

As set forth above, the Debtor has no counsel in the suit and cannot represent itself therein. Modifying the automatic stay to allow the suit to proceed against the Debtor will result in the unnecessary depletion of the limited assets and resources of the Debtor's estate. The Debtor estimated that if the action were allowed to proceed, it would expend at least several thousand dollars to prepare for and defend the matter. The Debtor has no insurance or legal reserve to cover these costs, and they would be the full, sole and immediate responsibility of the Debtor and could not be deferred or ignored.

Further, if the Debtor were to pay any portion of these costs during the case, it would be expending the assets of the estate to allow one creditor to pursue a remedy at the expense of all other creditors. Courts agree this is improper. See, e.g., AH. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 998 (4th Cir. 1986). The Debtor, its estate and the Debtor's unsecured creditors should not be forced to subsidize the Movant's efforts to augment their potential recovery over other unsecured creditors, particularly where unsecured creditors may receive small distributions herein.

Finally, as noted above, much of the financial concerns raised by the suit may be moot in the first instance, since the Debtor's secured lender will surely not authorize it to use cash collateral to pay for the matter. To allow the suit to proceed where the Debtor has no defense or attorney and is appearing only as a "shell" would be unreasonable and border on absurd. Accordingly, this factor weights in favor of denying the Motion.

### ii. The Balance of Hardships Weighs Significantly In Favor of the Debtor.

The above-described burdens forced upon the Debtor by the continuation of the suit far outweigh any inconvenience the Movant will encounter should the stay continue. Creditors such as the Movant "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it was appropriate for movant to pursue its claim by filing a proof of claim and participating in the bankruptcy court's claims-allowance process). This is and should be true regardless of whether the Movant is secured, unsecured, or both.

Here, the Movant fails to articulate how it will be prejudiced by pursing its alleged claims against the Debtor by filing proof thereof and participating in the claims-resolution process as contemplated under the Bankruptcy Code. Surely the fact that it costs time and money to bring a lawsuit does not mean that as a matter of law the automatic stay thereof "prejudices" the party - otherwise every lift-stay movant in every bankruptcy case in the country would be automatically "prejudiced" by continuing the stay and it would be pointless for courts to analyze the issue of "prejudice" at all.

By contrast, allowing the suit to proceed would divert the attention of the Debtor from the administration of the bankruptcy case during this critical period of the reorganization process. Courts have recognized that there is a critical need to shut down all collateral litigation in order to allow a chapter 11 debtor an opportunity to develop comprehensive litigation and reorganization plans:

> The purpose of this section [362] by its various subsections is to protect the Debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclued one creditor from pursuing a remedy to the disadvantage of other creditors, **and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.**

In re A.H. Robins, & Co., Inc., 788 F.2d. at 998 (emphasis added).

Here, the bankruptcy case is just a few weeks old and was filed specifically to gain the benefit of the automatic stay and stop the Debtor from being dismembered by non-bankruptcy court litigation involving the Movant. If forced to go back to participating in Movant's suit, the Debtor's principal will be severely prejudiced in his efforts to restructure and market the Debtor's assets at this critical early juncture in the bankruptcy case.

The Debtor has only one member. He has worked and is working feverishly to prepare the Debtor's schedules and statement of financial affairs, to comply with the U.S. Trustee's initial and monthly reporting requirements, and to administer the estate according to the Chapter 11 Operating Guidelines in effect in this District, the Local Rules of this Court, and the Federal Rules of Bankruptcy Procedure. All of these are entirely new to the Debtor, and of course the filing of the case presents other administrative matters that must be addressed day-to-day. Meanwhile, this is a crucial time for the Debtor's business, as it tries to assuage the concerns of all parties in interest and hone in on marketing the property for a prompt sale that yields maximum creditor recoveries.

Instead of litigating over pre-petition claims like those of the Movant, the Debtor should be allowed to focus its efforts on (i) developing a chapter 11 plan to distribute funds to the creditors in this case and (ii) negotiating and adjudicating claims as necessary to facilitate the development, and ultimate confirmation of, a chapter 11 plan.

Moreover, the Movant's lawsuit was filed some time ago and concerns events and documents from only a few years ago. That suit has a developed factual record and there is no showing in the Motion that relevant documents are likely to disappear or that witnesses will become unavailable. This is not a situation where a brief and continued stay of the litigation will harm the Movant's practical abilities to ultimately move forward on their suit. The Movant thus cannot establish that the additional time the Debtor requires to facilitate the development and confirmation of a chapter 11 plan and to determine the recovery available to creditors would cause the Movant sufficient additional hardship to justify modifying the automatic stay. All told, this factor weighs in favor of denying the Motion.

---

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, in

a form substantially similar to that annexed hereto as Exhibit 2, denying the Motion in its

entirety.

Dated: November 17, 2006
Hartford, Connecticut

Respectfully submitted,


_____/s/Eugene S. Melchionne_____
Eugene S. Melchionne, Esq.
26 First Avenue
Waterbury, CT 06710-2216
(203) 757-3437

-and-

James E. Huggett, Esq.
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
(302) 777-4682 (facsimile)

Proposed Counsel to Land Preserve, LLC