UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
LAND PRESERVE, LLC                                    Chapter 11

           Debtor                                   Case No. 06-21016

FOUR J FUNDING LLC                )
                               )
        Movant            )
                               )
v.                                )
                               )
LAND PRESERVE, LLC                )
                               )
        Respondent        )
                               )

APPEARANCES:

Kenneth J. Papa, Esq.
Law Offices of Kenneth J. Papa, L.L.C., 142 Boston Post Road, Madison, CT 06443
Counsel for Movant

Eugene S. Melchionne, Esq. and James E. Huggett, Esq.
27 First Avenue, Waterbury, CT 06710-2216
Counsel for Debtor-Respondent

RULING GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY

KRECHEVSKY, U.S.B.J.

I.

Land Preserve, LLC ("the debtor"), on October 20, 2006, filed a Chapter 11 petition, identifying itself as a "Single Asset Real Estate" business as defined in Bankruptcy Code §101(51B).[1] The petition listed as the debtor's sole asset unimproved

---

[1] Section 101(51B) states:
    The term "single asset real estate" means real property constituting a single

land (with a "16 unit permit") located in Coventry, Connecticut ("the property"), with a value of $1,700,000 and subject to three disputed recorded liens totaling $854,312.68.

Four J Funding, LLC ("the movant"), the holder of a first mortgage on the property, on October 27, 2006, filed a motion for relief from the automatic stay ("the motion") to permit the movant to continue with a pending state-court foreclosure action. The motion asserted that the debtor's case was "a single asset real estate case under Section 362(d)(3) of the U.S. Bankruptcy Code" (Motion ¶11); that the debtor lacked equity in the property; and that the property was not necessary for a reorganization. The debtor filed a "Response" to the motion on November 17, 2006, through counsel whose employment by the debtor's estate was subsequently approved by the court, on November 28, 2006, and December 7, 2006. The Response admitted that the case was a single asset real estate case (Response at B.11) and asserted there was substantial equity in the property which was crucial to an effective reorganization. A hearing on the motion started on December 27, 2006, and concluded on March 2, 2007, where the major contested issues were the basis for valuing the property and the debtor's efforts to reorganize. Following the hearing, the movant submitted opening and reply briefs and the debtor submitted an opening brief.

II.

BACKGROUND

The property comprises two parcels - the first of some 26 acres ("Babcock Hill

---

property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

2

parcel") and the second of 49 acres ("Pucker Street parcel"). The debtor, on December 6, 2001, granted the movant a first mortgage on the property to secure a one-year note for $350,000.

On that date, a portion of the property was being used as a sand and gravel mine under a special permit from the Town of Coventry, and leased to a lessee. The debtor had disposed of its mining equipment and leased the gravel mining operation to a lessee. At some point during 2002, the debtor terminated this lease and became delinquent on its mortgage payments to the movant. The debtor then decided to use the property for the construction of housing and to allow the mining special permit to lapse. On November 14, 2005, the Coventry Planning and Zoning Commission approved the debtor's special permit application "for construction of sixteen (16) active adult community condominium units with associated roadway, recreation area and utilities; property is located on Babcock Hill Road...." The approval contained eleven conditions, one of which was "the applicant shall submit to the Commission a final plan for the closure and restoration of the south and north site gravel pits." (Condition 8.)

The movant eventually filed a mortgage foreclosure action in the Connecticut Superior Court ("the state court"). The state court ordered a foreclosure auction of the property to be held on June 24, 2006. A few days prior to such date, the debtor filed a pro se Chapter 11 petition in this court. On July 27, 2006, this court dismissed the debtor's petition, on the motion of the United States Trustee, on the ground that the debtor, a limited liability company, was not qualified to file its petition pro se. The state court thereafter ordered a foreclosure auction for October 21, 2006. The debtor, now assisted by counsel, then filed the present petition on October 20, 2006, staying the

3

auction.

Frank H. Hastings ("Hastings") is the single-member owner of the debtor. He acknowledged at trial that there has been no gravel operation at the Babcock Hill parcel for over four years, that the property is the debtor's sole asset, that the gravel operation permit has expired, and that the debtor has made no payments on the mortgage loan during the past four years.

Hastings was the prior owner of a larger tract, of which the property was a portion, prior to deeding the property, on December 2, 2001, to the debtor. While the larger tract was in his name, Hastings made a number of conveyances. In one such conveyance, he retained a right of way for access to the gravel operation. The purchaser of that land contends such right of way no longer exists, and Hastings testified he would have to build a new road before a gravel operation would be permitted. He noted that the movant's assertion of its debt, as of the date of the petition, of $700,624.78 is based on a 24% interest default rate in the note. He also stated the Internal Revenue Service held a tax lien for $92,000 on the property and that there was a third encumbrance for an attorney's lien for $70,000.

Robert G. Stewart ("Stewart"), the holder of a Connecticut certified general appraiser license, testified on behalf of the movant as to the fair market value of the property. He stated that the Babcock Hill parcel had a value of $250,000, and the Pucker Street parcel a value of $80,000 for a total market value of $330,000. Stewart's appraisal determined the highest and best use of the property was: "Complete the required conditions of PZC approval and develop the Babcock Hill Road with PZC approved age-restricted active adult condominium complex. Open space recreational

4

land for [the Pucker Street parcel]." He, therefore, chose not to value the property as a gravel operation, and arrived at his valuation utilizing the comparable sales approach.

The debtor presented the testimony of Joseph E. Hickey ("Hickey") to establish its valuation of the property. Hickey, on January 18, 2000, had prepared a written appraisal for Hastings. He determined the highest and best use of the property was as a sand and gravel mining operation, and utilizing the income capitalization approach, he valued the Babcock Hill parcel at $1,400,000. He valued the Pucker Street parcel at $325,000 utilizing the sales comparison approach. He then rounded off the two valuations for a total of $1,700,000. Hickey, at the time of the appraisal, was a Certified Commercial & General Real Estate Appraiser, with extensive experience in appraising sand and gravel mining sites. He testified he retired approximately six years ago when he went into the real estate business. In his opinion, the valuation of the property in his written appraisal was valid as of the present time, and the Stewart appraisal should have included a value for the gravel mining potential use.

The debtor also presented the testimony of Thomas Wells ("Wells"), a real estate broker who had been contacted by Hastings to become the broker for the sixteen-unit condominium project. Wells testified that, if hired as a broker, he would advance the costs of advertising and signage. He also opined as to the potential sales price of the units if such units are built.

### B.

The movant, both in its motion and in the opening brief, noted the applicability to this proceeding of Bankruptcy Code §362(d)(3). Section 362(d)(3) provides as

5

follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
> . . .
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> (B) the debtor has commenced monthly payments that--
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; . . . .

The movant claims that, the debtor, never having filed a plan of reorganization nor made any interest payments to the movant, the movant is entitled to the granting of its motion on this ground alone. The debtor filed no response to this argument.

III.

CONCLUSION

The movant's argument that §362(d)(3) mandates the granting of its motion, unanswered by the debtor, is persuasive. There is no dispute that (1) the debtor fits the description of a single asset real estate, see,e.g. In re Pensignorkay, 204 B.R. 676, 681-82 (Bankr. E.D.Pa. 1997) (two adjacent parcels of undeveloped land not generating any income was within the definition of "single asset real estate"); In re Oceanside Mission

6

Assoc., 192 B.R. 232, 236 (Bankr. S.D.Cal. 1996) (similar); and (2) that the debtor has failed to make interest payments or to file a plan within 90 days after it had filed its petition (or to date). "The unequivocal language of the statute mandates relief from stay in such cases.... Congress was persuaded to give a secured creditor quick relief in a single asset case when the debtor fails to promptly file a plan or make early interest payments to the creditor secured by the real estate." Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.), 191 B.R. 320, 326-27 (Bankr. E.D.Va. 1996).

The court is not persuaded that the debtor is entitled to lesser relief than terminating the stay. The evidence produced at trial points to the debtor's efforts in the four years prior to its petition and the eight months subsequent to its petition designed to develop housing on the property. The court concludes such action, including the decision to allow its special permit to excavate gravel to lapse, makes the testimony of the movant's appraiser the most credible of all such testimony received.

The motion for relief from stay is granted. It is

SO ORDERED.

Dated at Hartford, Connecticut this 2 day of July, 2007.

                                                ROBERT L. KRECHEVSKY
                                                UNITED STATES BANKRUPTCY JUDGE